UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LIZA MARIE ANDERSON, | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO.: 4:18-CV-03058 |
| v. | § | |
| | § | |
| NANCY A. BERRYHILL, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

Plaintiff Liza Anderson filed this case under 42 U.S.C. § 405(g) of the Social Security Act for review of the Commissioner's final decision denying her request for disability insurance benefits and supplemental security income under the Act. The Commissioner and Anderson moved for summary judgment. (Dkts. 11, 12, 13). Anderson responded. (Dkt. 14). After considering the pleadings, the record, and the applicable law, the court **DENIES** the Commissioner's motion, **GRANTS** Anderson's motion, and remands this case to the Commissioner.[1]

## I. BACKGROUND

### 1. Factual and Administrative History

On April 5, 2015, Anderson filed an application for Disability Insurance Benefits and on October 2, 2015, she filed an application for Supplemental Security Income benefits. Both applications allege a disability onset date of June 30, 2014, (Dkt. 7-3 at 15), due to chronic anemia, vision problems, and back problems. (Dkt. 7-6 at 2; Dkt. 7-9 at 9; Dkt. 7-10 at 6). Following the

---

[1] The parties consented to the jurisdiction of this Magistrate Judge for all purposes. (Dkt. 9).

denial of her application and subsequent request for reconsideration, Anderson requested a hearing before an Administrative Law Judge (ALJ). A hearing took place on January 19, 2017. The ALJ issued a decision on March 30, 2017, finding that Anderson was not disabled within the meaning of the Social Security Act. (Dkt. 7-3 at 15-25). The Appeals Council denied review on April 11, 2018 (Dkt. 7-3 at 1-6), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

### 2. Standard for District Court Review of the Commissioner's Decision

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Stockman v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[2] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*,

---

[2] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

309 F.3d at 272. Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id*. The courts strive for judicial review that is "deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1956)).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Hamilton-Provost v. Colvin*, 605 F. App'x 233, 236 (5th Cir. 2015).

### 3. Disability Determination Standards

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Water*, 276. F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Work is "substantial" if it involves doing significant physical or mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland*, 771 F.3d at 924.

In the second step, the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Under applicable regulations, an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.922(a). Under Fifth Circuit binding precedent, "[a]n impairment can be considered as not severe *only if* it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "Re-stated, an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citing *Loza*, 219 F.3d at 391). This second step requires the claimant to make a *de minimis* showing. *Salmond*, 892 F.3d at 817.

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform her past relevant work by determining the claimant's "residual functional capacity" (RFC). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433

F. App'x 241, 245 (5th Cir. 2011).  The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe.  20 C.F.R. §§ 404.1520(e), 404. 1545(e); *Giles*, 433 F. App'x at 245; s*ee also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work.  *Newton*, 209 F.3d at 453 (citing 42. U.S.C. § 423(d)(1)(A)).  If the claimant meets her burden, the burden shifts to the Commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy."  *Id*.  Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### 4.    The ALJ's Decision

The ALJ performed the standard 5-step sequential analysis.  The ALJ found that Anderson had not engaged in substantial gainful activity since her alleged onset date of June 30, 2014; and suffered from the severe impairments of "[c]hronic anemia [and] degenerative disc disease of the cervical and lumbar spine [.]"  (Dkt. 7-3 at 17-18).  The ALJ determined that none of her impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 18-19).

The ALJ determined that Anderson had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b).[3] (*See* Dkt. 7-3 at 19). She further found that Anderson has the residual functional capacity to:

> stand or walk for 4 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday with normal breaks; . . . occasional reaching in all directions with bilateral upper extremities . . . engage in frequent handling and fingering with bilateral upper extremities . . . occasionally climb ramps and stairs, but . . . cannot climb ladders, ropes or scaffolds. [She] can engage in occasional balancing, stooping, kneeling, crouching, and crawling. [She] can have only occasional exposure to extreme heat and cold, and no exposure to hazards, including unprotected heights, moving mechanical parts, open flames, or bodies of water.

(*Id.*). Based on the testimony of a vocational expert, the ALJ found that with these restrictions Anderson could not perform her past relevant work as an order filler or retail store manager. (*Id.* at 23). However, she determined that Plaintiff has the residual functional capacity to perform jobs that exist in significant numbers in the national economy, including general office helper, mail clerk, and cashier. (*Id.* at 24). Ultimately, the ALJ concluded that Anderson "has not been under a disability, as defined in the Social Security Act, from June 30, 2014, through the date of this decision[.]" (*Id.*).

## II. ANALYSIS

In a single point of error, Anderson argues that the ALJ erred in assessing her residual functional capacity. (Dkt. 12 at 10-17). Anderson claims that the ALJ's determination of her residual functional capacity is not supported by substantial evidence because the ALJ failed to give controlling weight to the opinion of her treating physician. Specifically, she claims the ALJ erred by treating Dr. Spradlin, whom she mistakenly believed to be a chiropractor, as "an unacceptable medical source" whose opinion was not entitled to controlling weight, and therefore failed to

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

perform the analysis required by 20 C.F.R. §404.1527(c) and 416.927(c) to properly determine the weight that should have been given to his opinion. (Dkt. 12 at 10-17).

The Commissioner responds that the ALJ's decision is supported by substantial evidence, that the ALJ did perform an analysis of the relevant factors in 20 C.F.R. §404.1527(c) and §416.927(c), and that, any error was harmless. (Dkt. 13 at 4-12).

### A. The ALJ erred by assigning little weight to Dr. Spradlin's opinions without performing the analysis required by the regulations and *Newton*.

Medical opinions are defined in the regulations as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). A "treating source" is defined as an "acceptable medical source who provides…medical treatment or evaluation and…has had an ongoing relationship with [the claimant]." 20 C.F.R. §404.1527(a)(2), § 416.927(a)(2).

Medical opinions from a treating source are generally given more weight than opinions from other sources because treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); *see also*, *Carson v. Berryhill*, 286 F.Supp.3d 818, 831 (S.D. Tex. 2018). A treating physician's opinions regarding the nature and severity of a claimant's impairment, should be given controlling weight as long as the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); *see also, Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995). Only "acceptable medical sources" can be considered "treating sources" whose medical opinions are entitled to controlling weight." SSR 06-03p (2006).

The parties agree that Dr. Spradlin was Anderson's treating physician and that his opinion regarding her functional capacity is not contradicted another examining physician. The ALJ noted that Dr. Spradlin opined that "due to [Anderson's] disorders of the cervical and lumbar spine, [Anderson] would essentially be limited to performing significantly less than the full range of sedentary work." (Dkt. 7-3 at 21 (citing Dkt. 7-12 at 2-3)). Specifically, Dr. Spradlin opined that her limitations included sitting no more than 3 hours out of an 8 hour workday (the ALJ found she could sit for 6 of 8 hours), standing/walking no more than 2 hours out of an 8 hour workday (the ALJ found she could walk 4 of 8 hours), and that during an 8 hour work day she would require unscheduled breaks every 15-30 minutes that lasted for 30-40 minutes in duration (the ALJ found she needed only normal work breaks in an 8 hour work day). *Id.* Additionally, he stated she would be absent more than 4 times per month. *Id.* The ALJ accorded little weight to Dr. Spradlin's opinions regarding Anderson's limitations because she mistakenly believed he was a chiropractor: "[a] chiropractor is not an 'acceptable medical source'…[and] [t]herefore his opinion is not entitled to controlling weight." (Dkt. 7-3 at 21).

To the extent the ALJ assigned little weight to Dr. Spradlin's opinion solely because she mistakenly believed he was a chiropractor and therefore not "an acceptable medical source," she clearly erred. (Dkt. 7-3 at 21). Spradlin is an osteopathic doctor, and thus is an acceptable medical source under the Regulations. Social Security Administration, Program Operations Manual System § DI 22505.003, *available at* https://secure.ssa.gov/POMS.NSF/LNX/0422505003. Because he is an acceptable medical source and Anderson's treating physician, Dr. Spradlin's medical opinion regarding Anderson's limitations should have been accorded controlling weight unless the ALJ demonstrated good cause for assigning it little weight.

Good cause for assigning less than controlling weight to a treating physician's opinions exists if the opinions are conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques or are otherwise unsupported by the evidence. *Newton*, 209 F.3d at 456; *see also Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The only reason provided by the ALJ for refusing to assign controlling weight to Spradlin's opinion is her statement that "[a] chiropractor is not an acceptable medical source," and "[t]herefore his opinion is not entitled to controlling weight." (Dkt. 7-3 at 21). The remainder of the ALJ's discussion of Dr. Spradlin's opinion relates to the reasons she assigned little weight to his opinion, referencing SSR 06-03p, an agency regulation with the stated purpose of "clarify[ing] how we consider opinions from sources who are not "acceptable medical sources." This regulation clarifies that while acceptable medical sources must be evaluated pursuant to the rules in 20 C.F.R. §§ 404.1527 and 416.927 (the six factor analysis), no regulation addresses "how to consider relevant opinions … from other sources." SSR 06-03p. Because the ALJ did not consider Spradlin's opinion as a treating source opinion entitled to controlling weight, she did not state good cause for rejecting it or assigning it little weight.

The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence because her decision states that she considered opinion evidence in accordance with 20 C.F.R §§ 404.1527 and 416.927 and that she actually performed an analysis of the relevant factors included in those sections. (Dkt. 13 at 4, 6 (citing ALJ decision, Dkt. 7-3 at 19, 21). First, the ALJ's decision does not demonstrate an analysis of the factors set forth in 20 C.F.R §§ 404.1527 and 416.927. The ALJ's "cursory, boilerplate statement" that she considered opinion evidence in accordance with sections 404.1527, 416.927 and certain SSR's "does not constitute an explanation

for rejecting" a treating source medical opinion. *See Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017).

Second, because the ALJ mistakenly believed Spradlin was not an acceptable medical source, she *could not have* considered his opinions to be medical source statements or treating source opinions subject to the six factor analysis contained in 20 C.F.R. §§ 404.1527 and 416.927. According to federal regulations, the social security agency "evaluate[s] evidence [it] receives according to the rules pertaining to the relevant category of evidence." One such category of evidence is a "medical opinion." A medical opinion is an opinion from an "acceptable medical source" "about what [a claimant] can still do despite [her] impairments" 20 C.F.R. § 404.1527(a)(1), 20 C.F.R. §§404.1513(a)(2)(i-iv). A "medical source statement" is a "medical opinion[] submitted by [an] *acceptable medical source*[], including treating sources, ...about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." SSR 96-5p, 1996 WL 374183 at *4 (emphasis added). Because the ALJ incorrectly believed Spradlin was not an acceptable medical source, she could not have considered his opinions as treating source opinions or medical source opinions.

The ALJ did not treat Spradlin's opinion as a treating source or medical source statement and therefore, nothing in her decision reflects the six-factor analysis set forth in §§ 404.1527 and 416.927.<sup>4</sup> "When an ALJ finds that opinions of a treating source are not entitled to controlling weight, he or she must consider the six factors set out in the regulations to properly assess the

---

<sup>4</sup> The six factors that must be analyzed when assigning less than controlling weight to a treating source medical opinion that is not controverted are: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. 20 C.F.R. § 404.1527(d)(2) and 416.927(c).

weight to be given to the opinions." *Perry v. Colvin*, No. 13-CV-2252-P, 2015 WL 5458925, at *8 (N.D. Tex. Sept. 17, 2015). Although an express analysis of the six factors is not required in cases involving competing medical opinions, *Qualls v. Astrue*, 339 F. App'x. 461, 467 (5th Cir. 2009), it is undisputed in this case that Dr. Spradlin's opinion is the only opinion that addresses what Anderson can still do despite her limitations. (Dkt. 13 at 6). As such, the ALJ was required to perform the six-factor analysis before assigning little weight to Spradlin's opinion. *Id.* ("The *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it."); *Rollins v. Astrue*, 464 F. App'x 353, 358 (5th Cir. 2012) (finding that the plain implication of *Newton's* requirement that an ALJ conduct the six-factor analysis in the absence of controverting medical evidence, is that "where there *is* reliable medical evidence from a treating or examining physician that controverts the claimant's physician, the detailed inquiry of each factor in § 404.1527(d)(2) is unnecessary." (emphasis added)); *Perry*, 2015 WL 5458925, at *7 ("*absent* reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]" (initial emphasis added).

The ALJ erred when determining Anderson's RFC by finding that Dr. Spradlin was not an acceptable medical source who could render a medical opinion entitled to controlling weight, and by failing to provide a discussion of the six factors when deciding to accord Dr. Spradlin's uncontroverted medical opinion little weight. *Perry*, 2015 WL 5458925, at *10 ("Under the facts of this case, the ALJ was required to provide a detailed analysis of the six factors. And the ALJ did not do so.'). The remaining issue to be decided is whether the error was harmless. *Id.* ("[E]ven

if an ALJ procedurally errs by not more fully considering and weighing the opinions of a treating physician, reversal and remand is only required when the error affects the substantial rights of the claimant."); *Dziuk v. Barnhart,* 67 F. App'x 248 (5th Cir. 2003) ("Dziuk has not demonstrated that the ALJ would have found Dziuk to be disabled if the ALJ had properly understood [his treating physician's] statement. Thus, Dziuk has not shown that he was prejudiced by the ALJ's error"); *Kneeland*, 850 F.3d at 761–62 (applying harmless error analysis in decision to remand case due to ALJ's failure to consider treating physician opinion).

### B. Anderson has shown the requisite prejudice to support remand.

A claimant establishes prejudice by showing that, absent the error, the ALJ might have reached a different conclusion, or by pointing to evidence that, absent the ALJ's error, could have changed the result. *See Newton*, 209 F.3d at 458; *see also Ripley*, 67 F.3d at 557, n.22 ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."); *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) ("Brock points to no evidence that, had the ALJ developed the record further, would have been adduced at the hearing and that could have changed the result. We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges."). On the facts of this case, the court cannot find that the ALJ's failure to consider Dr. Spradlin's opinion as a treating source or medical source opinion was harmless error.

The ALJ's failure to analyze Dr. Spradlin's opinion as one entitled to controlling weight makes it "impossible to know whether the ALJ properly considered and weighed [his] opinion [of

Anderson's functional limitations], which directly affects the RFC determination." *Kneeland*, 850 F.3d at 761-62. In this case, the Vocational Expert testified that if Anderson was limited as stated in Dr. Spradlin's functional assessment, there would be no work in the national economy that she could perform. Dkt. 7-5 at 38. Thus, as in *Kneeland*, without knowing whether the ALJ would have accorded Dr. Spradlin's opinion controlling weight if she had recognized him as a treating physician, the court cannot say whether the RFC and ultimate disability determination likely would have been the same. *See also Wilder v. Colvin*, No. 13-CV-3014, 2014 WL 2931884 at *6 (N.D. Tex. 2014) ("On the record before it, the Court cannot say that the failure to conduct the detailed analysis is harmless error. Had the ALJ conducted that analysis, there is a realistic possibility that he would have given greater weight to the opinions of the treating physicians instead of the opinions of the nonexamining physician.").

It is possible that Anderson could have been found disabled had Dr. Spradlin's opinion been afforded something other than slight weight. *Id.* Of course, it is also possible that, had the ALJ fully considered and properly analyzed Dr. Spradlin's opinion, she could have made the same RFC and disability determination. But without the analysis required by *Newton* and the regulations, the court has no way of knowing whether the RFC and disability determination would have been the same. *See Kneeland*, 850 F.3d at 761-62; *see Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion."). Had the ALJ performed the detailed analysis required by 20 C.F.R. § 404.1527 and 416.927 to properly weigh Dr. Spradlin's opinion,

there is a "realistic possibility that [s]he would have reached a different conclusion in [her] decision." *Perry*, 2015 WL 5458925, at *12.

The parties agree that Dr. Spradlin's opinion is the only medical source opinion that addresses Anderson's functional limitations. While Dr. Krishnamurthi testified at the hearing regarding Anderson's residual functional capacity, he was neither an examining nor a treating physician. Furthermore, he had reviewed only the medical records contained in Exhibits 1-3F and never saw those contained in Exhibits 4-15 F, which include the imaging reports, Dr. Spradlin's treatment records, or Dr. Spradlin's physical and mental assessments addressing Anderson's functional limitations. (Dkt. 7-12 at 10; Dkt. 7-12 at 15-20). The imaging reports include diagnostic impressions and findings from cervical and lumbar imaging of: L5-S1 moderate bilateral foraminal stenosis with minimal right nerve root encroachment (Dkt. 7-11 at 70); C5-C6 disc protrusion (herniation) indents the cervical cord with moderate canal stenosis (Dkt. 7-11 at 84); and L5-S1 disc protrusion (herniation)with anular fissures that indent the thecal sac (Dkt. 7-11 at 83). Meanwhile, Dr. Spradlin's treatment records contain objective findings of: muscle pain in lower lumbar region L4-L5 and over SI joints bilaterally, but worse on left, decreased flexion/extension (Dkt. 7-12 at 8); decreased left arm strength and weakness on left side, left arm/left leg weakness (Dkt. 7-12 at 9); and muscle tenderness in low back and decreased range of motion, paravertebral tenderness (Dkt. 7-12 at 10). These findings could have been considered by the ALJ as consistent with Dr. Spradlin's functional assessment had she properly considered his opinions to be those of a treating physician entitled to controlling weight. Instead, the ALJ gave Dr. Spradlin's opinion little weight in the absence of a contrary opinion from a treating source and without the detailed analysis required by 20 C.F.R. §§ 404.1527 and 416.927. *Wilder*, 2014 WL 2931884, at *6 ("To reject the RFC opinions without a contrary opinion from a treating or

examining source would require usurping the physician's role.").  The ALJ's "procedural error casts doubt on the existence of substantial evidence to support the decision to deny benefits. Therefore, Plaintiff's substantial rights have been affected by the consideration and weight accorded to the opinions of Dr. [Spradlin] by the ALJ.  This procedural error is not harmless." *Perry*, 2015 WL 5458925, at *12.  On remand, the ALJ must properly consider the opinions of Dr. Spradlin consistent with the applicable social security regulations and rulings.

### III.    CONCLUSION

For the reasons discussed above, the court **DENIES** the Commissioner's motion, **GRANTS** Anderson's motion, and remands this case to the Commissioner.

Signed on July 19, 2019, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge